In re Travelers Lloyds Insurance Company















IN THE
TENTH COURT OF APPEALS
 

No. 10-01-360-CV

IN RE TRAVELERS LLOYDS INSURANCE COMPANY

 

 Original Proceeding
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

MEMORANDUM OPINION
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â Â Â Â Â Â Our Supreme Court has rejected âan inflexible rule that would deny the trial court all
discretion and . . . require severance in every case [involving bad-faith insurance claims],
regardless of the likelihood of prejudice.â Liberty Nat. Fire Ins. Co. v. Akin, 927 S.W.2d 627,
630 (Tex. 1996) (orig. proceeding). Thus, the question of whether to sever and abate lies within
the discretion of the trial judge. Id.
Â Â Â Â Â Â Our decision to deny the petition for a writ of mandamus in this instance is based primarily
on two factors. First, unlike the situation in Texas Farmers Ins. Co. v. Stem, 927 S.W.2d 76
(Tex. App.âWaco 1996, orig. proceeding), there will not be a trial on the breach-of-contract
issuesâthose are the subject of a partial summary judgment in favor of the insured. Second,
unlike the situation in Mid-Century Ins. Co. of Texas v. Lerner, 901 S.W.2d 749 (Tex.
App.âHouston [14th Dist.], orig. proceeding), the record before us indicates little likelihood that,
were the breach-of-contract issues to be appealed and reversed, the claim would be remanded for
trial. It appears that the damages are liquidated in one of two amounts: $384,313.72, if the âother
insuranceâ clause allows the company to prorate the loss, or $700,000, if the insured is entitled
to the full policy limits. The question appears to be one of law.
Â Â Â Â Â Â The petition for writ of mandamus is denied. Relatorâs motion for temporary emergency
relief is also denied.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â BILL VANCE
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Before Chief Justice Davis,
Â Â Â Â Â Â Justice Vance, and
Â Â Â Â Â Â Justice Gray
Â Â Â Â Â Â (Justice Gray dissenting)
Petition denied
Opinion delivered and filed November 1, 2001
Publish
[CV06]



a href="#_ftn1" name="_ftnref1" title="">[1]
sufficiency of the evidence.  Specifically, C.S. asserts that the evidence was
insufficient to show that the cost of repairing the vehicle was in excess of
$1,500 because the body shop estimator was not an expert and there was
pre-existing damage to the vehicle.Â  He also argues that the evidence was
insufficient to show that he was the person who committed the offense.

Standard
of Review 

When reviewing a challenge to the legal
sufficiency of the evidence to establish the elements of the penal offense that
forms the basis of the finding that the juvenile engaged in delinquent conduct,
we must determine whether, after viewing all the evidence in the light most
favorable to the verdict, any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt.Â  See Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979);
In re S.S., 167 S.W.3d 108, 111 (Tex. App.ÂWaco 2005, no pet.).

We do not resolve any conflict of fact or assign
credibility to the witnesses, as this was the function of the trier of the
fact.Â  See Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); Adelman
v. State, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992); Matson v. State,
819 S. W.2d 839, 843 (Tex. Crim. App. 1991).Â  Instead, our duty is to determine
if both the explicit and implicit findings of the trier of fact are rational by
viewing all of the evidence admitted at trial in a light most favorable to the
verdict.Â  Adelman, 828 S.W.2d at 422.Â  In so doing, any inconsistencies
in the evidence are resolved in favor of the verdict.Â  Curry v. State,
30 S.W.3d 394, 406 (Tex. Crim. App. 2000); Matson, 819 S.W.2d at 843.

In a factual sufficiency review, we ask whether a
neutral review of all the evidence, though legally sufficient, demonstrates
either that the proof of guilt is so weak or that conflicting evidence is so
strong as to render the factfinder's verdict clearly wrong and manifestly
unjust.Â  Watson v. State, 204 S.W.3d. 404, 414-15 (Tex. Crim. App.
2006); In re S.S., 167 S.W.3d at 112-13.

Pecuniary
Loss

A person commits the offense of criminal mischief
if, without the consent of the owner, he intentionally and knowingly damages or
destroys the tangible property of the owner.Â  Tex.
Pen. Code Ann.Â  Â§ 28.03(a) (Vernon 2003).Â  Criminal mischief includes as
an element the value of the injury inflicted.Â  See id. Â§ 28.08(b); Gallardo v. State, 167 Tex. Crim. 511, 321 S.W.2d
581, 581 (1959).Â  The amount of pecuniary loss determines the
punishment range for the offense.Â  See Tex.
Pen. Code Ann. Â§ 28.03(b) (Vernon 2003).

C.S.'s first and second issues, in part, contend
that Devall's testimony is not legally and factually sufficient to prove the cost
of repairs because Devall was not qualified to give an expert opinion on repair
costs.Â  A lay opinion about repair costs by an individual who is not competent
to give an expert opinion, but is merely giving his "off-the-wall"
lay opinion, is not sufficient to prove
pecuniary loss. Â See Elomary v. State, 796 S.W.2d 191, 193 (Tex. Crim.
App. 1990).Â  Conversely, an expert opinion on a repair estimate given by a
witness, such as an insurance adjuster, who is qualified to testify as to the
fair market value of the expected repair cost is sufficient to prove the
pecuniary loss.Â  See id.

In this case, Devall, the body shop estimator,
testified that the actual cost to repair the vehicle without the pre-existing
damage was $4,702.76.Â  The State qualified Devall as an expert by establishing
that he had been in the body shop estimation business for over ten years and
had specific experience in repairing the type of damage that was done to K.W.Âs
vehicle.Â  Devall testified that at the time of the incident he was working at
Collision Specialists and that he had previously worked for other body shops
doing repair estimation.Â  He stated that in terms of training, there is no body
shop estimation certification and that most experience comes from on-the-job
training.Â  He also testified that when doing estimates, he uses a computer
program called Pathways, a standard program used exclusively by all of the body
shops he has worked at.Â  Devall testified that he examined and evaluated the
damage to K.W.Âs truck and felt that the damage was consistent with vandalism
done by rock throwing.Â  He testified that he submitted his estimate to the
insurance company and that when the vehicle was repaired they submitted a check
to Collision Specialists.Â  We find that Devall's testimony on the cost to
repair the automobile is sufficient to prove the fair market value of that
cost.[2]

C.S. also argues that the repair work included all
dents and scratches on the car, including the pre-existing damage to the
vehicle.Â  However, Devall and K.W. each testified that repair of the pre-existing
damage was billed separately.Â  Additionally, the insurance adjusterÂs claim
report was entered into evidence, indicating that the insurance company had
reviewed the body shop estimate and found the damages to be consistent with K.W.Âs
vandalism claim.Â  Moreover, even after deducting the cost to repair the
pre-existing damage to the vehicleÂwhich Devall testified would cost a maximum
of $1,500Âthe remaining repair costs
still exceeded $1,500.

Identification
Challenge

The second part of C.S.Âs evidentiary sufficiency
challenge questions whether the State offered legally and factually sufficient
evidence to prove that he is the person who damaged K.W.Âs truck.Â  Thus, C.S.
challenges the legal and factual sufficiency of the evidence to prove identity.

Identity may be proved by direct or circumstantial
evidence. Â In fact, identity may be proven by inferences.Â  Lockwood v. State,
237 S.W.3d 428, 432 (Tex. App.ÂWaco 2007, no pet.).Â  When there is no direct
evidence of the perpetrator's identity elicited from trial witnesses, no
formalized procedure is required for the State to prove the identity of the
accused.Â  Proof by circumstantial evidence is not subject to a more rigorous
standard than is proof by direct evidence.Â  For the purposes of proving guilt
beyond a reasonable doubt, direct and circumstantial evidence are equally
probative.Â  Clark v. State, 47 S.W.3d 211, 214 (Tex. App.ÂBeaumont 2001, no pet.) (quoting Roberson
v. State, 16 S.W.3d 156, 167 (Tex. App.ÂAustin 2000, pet. ref'd)).

Here, the jury heard both direct and
circumstantial evidence in the identification of C.S.Â  C.S. claims that K.W.
testified that he did not know C.S.Âs name and that he only knew him from
seeing him in the hallways at school.Â  However, at trial K.W. stated that he
was unaware of only C.S.Âs last name, and that when describing C.S. to Moreland
in order to determine C.S.Âs last name, he described him as Âthe one that comes
in the classroom every now and again from the classroom thatÂs across the
hall.ÂÂ  C.S. claims that he had only been in MorelandÂs classroom once, upon
invitation to watch a movie and eat pizza with his teacher Vance Hughes.Â 
However, Moreland later corroborated K.W.Âs testimony by stating that C.S. had
come into his classroom on several occasions without permission and that C.S. had
been invited for pizza and a movie.Â  This evidence, though conflicting, is some
evidence that C.S. was correctly identified.

C.S. also argues that the evidence is insufficient
because on the police report made by Officer Pappas it lists C.S. as a white
male.Â  Although no evidence was presented to explain this discrepancy,
substantial other evidence could have been used by the jury to infer that C.S.
was in the group that threw rocks at the truck.Â  Both Moreland and Hughes
testified that no one at the school resembles C.S.Â  They both also testified
that C.S. knew S.N., one of the other students identified in the incident.Â 
Although C.S. testified that he does not know S.N. and had never spoken with
him, Hughes said that on several occasions S.N. would come by his class to let C.S.
know that he was leaving.Â  He also testified that he has seen S.N. and C.S.
talking and that he knows that they know each other.Â  C.S. later testified that
the reason he does not Ârun aroundÂ with S.N. is because he Âhad a fight with
him before.ÂÂ  C.S.Âs own testimony is conflicting.

C.S. also argues that he could not have been the
one throwing rocks at K.W.Âs truck at 11:35 a.m. on March 9 because he does not
get out of class until noon on Monday through Thursday and when he does get out
of class, Hughes waits with him to be picked up.Â  Hughes however testified that
he allows C.S. to leave class at 11:30 a.m. almost every day so that he can
take his lunch break.Â  When C.S.Âs father, who regularly picks up C.S. from
school, was asked whether Hughes was with C.S. on a regular basis while he was
waiting outside to be picked up, he stated that he was not sure because he
ÂcanÂt see through the vehicle.Â

We find more than enough evidence to support the
juryÂs findings.Â  The jury, weighing the evidence and credibility of the
witnesses, made the determination that C.S. committed the offense.Â  Because the
evidence is legally and factually sufficient, we will not disturb that
finding.Â  C.S.Âs first and second issues are overruled.

Expert Testimony 

In his third issue, C.S. asserts that the trial
court erred in failing to conduct a
Âgatekeeper hearingÂ to determine if Devall was qualified to testify as an
expert over his objection.Â  C.S.
argues that he objected to DevallÂs expert testimony, and despite that, the
trial court did not act upon its responsibility to be a gatekeeper and evaluate
whether DevallÂs testimony was relevant and reliable to aid the jury.Â  The
State argues that C.S. failed to make this particular objection at trial and
therefore waived this complaint.Â  When the StateÂs expert, Devall, testified,
the prosecutor asked several questions regarding the witnessÂs training and
experience and then tendered the witness as an expert.Â  C.S. objected as
follows:

I donÂt know why heÂs being tendered as an expert
for.Â  Is it for the art of estimating or the body damage?Â  ThatÂs not clear
here.Â  HeÂs - he just indicated he has no certifications, no formal training.Â 
What he does know about is what he picked up in the shop, so we would object to
presenting him as an expert.

Â 

Trial counsel did not ask the court to conduct a
Âgatekeeper hearingÂ outside the presence of the jury.Â  After overruling C.S.Âs
objection the trial court stated:

Generally, under Texas law, the witness will go
forward as an expert, unless formally objected to or challenged.Â  So he does
not necessarily need to be tendered to the Court.Â  So weÂll go forward.Â  If you
have an objection to an opinion, or if you wish to have any type of gatekeeper
hearing, you can make the request at the appropriate time.

Â 

Even after being prompted, C.S. did not ask the
court to conduct a Âgatekeeper hearing.ÂÂ  Further, when a copy of the estimate
performed by Devall, containing his opinions as to the cost of the repair of
the vehicle, was entered into evidence, C.S. stated that he had no objection
and the exhibit was admitted.

To preserve a complaint for appellate review, a
party must make a timely objection, stating the specific grounds of the
objection.Â  Tex. R. Evid.
103(a)(1); Tex. R. App. P. 33.1(a);
In re M. P., 220 S.W.3d 99, 101 (Tex. App.ÂWaco 2007, pet. denied); see
also In re E.M.R., 55 S.W.3d 712, 716 (Tex. App.ÂCorpus Christi
2001, no pet.) (holding the appellant failed to preserve a complaint regarding
admission of statement by failing to object at trial on the same grounds as he
was complaining on appeal).Â  Because C.S. did not ask the trial court to
conduct a Âgatekeeper hearing,Â he has failed to preserve this complaint.Â  Furthermore,
when the written version of DevallÂs testimony was admitted without objection,
any error was rendered harmless.Â  Beaumont v. Basham, 205 S.W.3d
608, 622 (Tex. App.ÂWaco 2006, no pet.).

Construing C.S.Âs argument as a challenge to
DevallÂs qualifications, we refer to our earlier discussion regarding DevallÂs knowledge
and experience.Â  We review the trial courtÂs admission of expert testimony for
an abuse of discretion.Â  Weatherred v. State, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). Â Because we have determined that the record established that Devall
had extensive experience and knowledge in the area of body shop estimation, we
hold that it was not an abuse of discretion for the trial court to allow him to
testify as an expert.Â  We overrule C.S.Âs third issue.




Conclusion 

Having overruled C.S.Âs three issues, we affirm
the trial court's judgment.

Â 

BILL VANCE

Justice

Â 

Â 

Â 

Before Chief Justice
Gray,

Â Â Â Â Â Â Â Â Â Â Â  Justice
Vance, and

Â Â Â Â Â Â Â Â Â Â Â  Justice Reyna

(Chief Justice Gray concurs with a
note)*

Affirmed 

Opinion delivered and
filed January 30, 2008

[CV06]

Â 

*(Chief
Justice Gray expressly disagrees with the discussion in footnote 1 regarding
preservation of factual sufficiency complaints in juvenile proceedings.Â  The
discussion in that footnote, in large part, surrounds two potential issues not
presented to us for decision:Â  1) ineffective assistance of trial counsel for
the failure to file a motion for new trial asserting factual insufficiency
prior to withdrawal; and 2) lack of the assistance of counsel at a critical
stage of the proceedings.Â  We should be more careful to not let those two
issues muddy the water on deciding whether in a juvenile proceeding
preservation of a factual insufficiency issue must be preserved by a complaint
raised in a motion for new trial.Â  For a discussion of the proper method for
consideration of that issue, see In re C.O.S., 988 S.W.2d 760 (Tex. 1999).Â  See also In re B.L.D., 113 S.W.3d 340 (Tex. 2003).Â  Of course, as the
footnote states, the prior holding of this Court is that Âjuvenile proceedings
are not exempt from this requirement.ÂÂ  Further, Chief Justice Gray questions
whether the discussion of DevallÂs expertise in estimating automobile body
repair is necessary.Â  Devall is a person with personal knowledge of a relevant
fact Â that the actual cost, not an estimate, to repair the vehicle without the
pre-existing damage was $4,702.76.Â  With these observations, Chief Justice Gray
concurs in the judgment of the Court but a separate opinion will not be
issued.)

Â 









[1] C.S. failed to file a motion for new trial
challenging the factual sufficiency of the evidence, and the State urges that
he failed to preserve this ground for review.Â  See Tex. R. Civ. P. 324(b); In the
Matter of M.R., 858 S.W.2d 365, 366 (Tex. 1993).Â  We have previously held
that Âjuvenile proceedings are not exempt from this requirement.ÂÂ  See In re
J.A.A., 2003 Tex. App. LEXIS 10880, No. 10-03-00012-CV, 2003 WL 23120184,
at *1 (Tex. App.ÂWaco Dec. 31, 2003, no pet.) (mem. op.) (not designated for
publication) (indicating a motion for new trial raising a factual sufficiency
challenge is required).Â  However, we note that in this case the judgment was
signed on April 25, 2007, giving C.S. thirty days from that date in which to
file a motion for new trial.Â  Tex. R.
Civ. P. 329b(a); Tex. Fam. Code Ann.
Â§ 56.01(b) (Vernon 2002).Â  Approximately two weeks after the judgment was
signed, C.S.Âs attorney asked to withdraw.Â  Nine days later, the court allowed
him to, and a new attorney was not appointed until after the deadline to file
the motion for new trial had expired.Â  Therefore, in light of the split by the
courts of appeals on whether a motion for new trial is required in juvenile
cases, and in the interest of justice, we will address the issue.Â  See In
re O.G.J., No. 03-05-00806-CV, 2006 Tex. App. LEXIS 11000 at *7, (Tex. App.ÂAustin Dec. 20, 2006, no pet.) (mem. op) (factual sufficiency point reviewed in
the interest of justice even though appellant failed to raise the issue in a
motion for new trial); Compare In re D.J.H., 186 S.W.3d 163, 166
(Tex. App.ÂFort Worth 2006, pet. filed) (citing In re J.B.M.,157 S.W.3d
823, 827-28 (Tex. App.ÂFort Worth 2005, no pet.) (en banc)) (motion for new
trial necessary to preserve factual
sufficiency ground); In re F.F.G., No. 03-05-00854-CV, 2006 Tex. App.
LEXIS 10306, at *4-5 (Tex. App.ÂAustin Nov. 29, 2006, no pet.) (motion for new
trial only required to preserve complaints about the factual sufficiency of the evidence
supporting jury findings); In re J.L.H., 58 S.W.3d 242 (Tex. App.ÂEl
Paso 2001, no pet.) (concluding that a motion for new trial raising a factual
sufficiency challenge is not required in juvenile cases). 

Â  

Â 





[2] The State is not required to prove that the cost
of repair was reasonable.Â  See Kinkade v. State, 787 S.W.2d 507,
509 (Tex. App.ÂHouston [1st Dist.] 1990, no pet.); Dorado v. State, 943
S.W.2d 94, 96 (Tex. App.ÂCorpus Christi 1997, no pet.). Â However, this issue is
not before us.